IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA BAUGHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02475-BK |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 15), this case has been transferred to the undersigned for final ruling. The cause is now before the Court on Plaintiff's *Motion for Summary Judgment* (Doc. 19) and Defendant's *Motion for Summary Judgment* (Doc. 22). For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **GRANTED**, Defendant's *Motion for Summary Judgment* is **DENIED**, and the Commissioner's decision is **REVERSED AND REMANDED**.

### I. BACKGROUND[1]

**A.     Procedural History**

Lisa Baughman ("Plaintiff") seeks judicial review of a final decision by the Commissioner denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed her applications for DIB and SSI in September 2010, alleging that she became disabled at that time due to fibromyalgia,

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

chronic fatigue, irritable bowel syndrome, arthritis, a nervous disorder, agoraphobia, and post-traumatic stress disorder ("PTSD"). (Tr. 118, 122, 145). Plaintiff's claims were denied at all administrative levels, and she now seeks review in this Court pursuant to 42 U.S.C. § 405(g). (Tr. 1, 8, 11, 22, 49, 52).

**B.     Factual History**

Plaintiff was 39 years old at the time of the administrative hearing. (Tr. at 30). She had completed high school up to half of the twelfth grade and had previously worked as a graphic artist and retail clerk. (Tr. at 19, 30). When she was examined by Dr. Hoang Dinh in March 2010, Plaintiff reported a three-year history of arthralgias (joint pain), wrist pain, and finger pain shooting into her elbows.[2] (Tr. at 241). Dr. Dinh noted Plaintiff's mid-back scoliosis and abnormal immunology lab tests, and he opined that she had either systemic lupus erythematosus arthritis ("SLE") or seronegative rheumatoid arthritis. (Tr. at 241-43). During a follow-up, Plaintiff reported that prescription medication helped with her pain, but she still had some mild aches. (Tr. at 238). In June 2010, Plaintiff reported to internist Dr. Joe Etter her history of anxiety disorder, which was originally diagnosed in 2008. (Tr. at 253). Plaintiff stated that she experienced panic attacks several times per week, which caused insomnia, sweating, and lightheadedness. *Id.*

In July 2010, Plaintiff consulted rheumatologist Dr. Carlos Kier for joint pain and severe fatigue. (Tr. at 273-74). Plaintiff's range of motion in her major joints was good, and her strength was within normal limits. (Tr. at 273). Dr. Kier found that she likely suffered from

---

[2] All medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed. 2000), available on Westlaw.

2

fibromyalgia, not SLE. (Tr. at 274). In September 2010, Dr. Kier affirmed his initial fibromyalgia diagnosis, which he concluded was now exacerbated due to external stressors. (Tr. at 272). Plaintiff reported increased diffuse pain and stiffness in her upper and lower extremities along with chronic fatigue. *Id.* Dr. Kier also noted Plaintiff's benign essential tremor.[3] *Id.* In December 2010, Plaintiff again complained of fatigue, joint stiffness, and tremors. (Tr. 342-43).

In a January 2011 Mental Status Report, treating nurse practitioner Susan Short noted Plaintiff's continued generalized pain and tenderness along with a very low tolerance for physical activity which, when increased, resulted in increased muscle pain. (Tr. at 334). Nurse Short diagnosed Plaintiff with fibromyalgia, generalized anxiety disorder, agoraphobia, and chronic fatigue syndrome and opined that her prognosis was poor, although some symptoms might be ameliorated by medication. (Tr. at 335-36). She also noted Plaintiff's unlikely ability to work due to her decreased tolerance for sitting, standing, or prolonged activity without very frequent periods of rest. (Tr. at 336).

In March 2011, Plaintiff underwent a psychological evaluation during which Dr. Betty Eitel affirmed her 2008 PTSD diagnosis. (Tr. at 391). Dr. Eitel attributed the PTSD to childhood sexual abuse by Plaintiff's biological father and mental abuse by her stepfather. *Id.* Dr. Eitel also reported that Plaintiff suffered from (1) adjustment disorder with depressed mood; (2) bereavement; (3) generalized anxiety disorder; (4) social phobia generalized; (5) panic disorder with agoraphobia; and (6) a history of anorexia. (Tr. at 395). Based on this evaluation,

---

[3] Benign essential tremor is a tremor inherited as a dominant character, which may be (1) a rapid oscillation; (2) a coarse tremor during rest that is inhibited by a voluntary effort; or (3) a tremor which appears only upon movement.

Dr. Eitel assigned Plaintiff a GAF score of 55.[4]  *Id.*  Plaintiff reported that she could cook, do some housework, take care of her own personal hygiene, and pay her bills.  (Tr. at 392).

In July and September 2011, Nurse Short noted Plaintiff's multiple mental impairments including a "long history of panic disorder," "severe" panic attacks, anxiety, depression, PTSD, and agoraphobia.  (Tr. at 416, 423, 425).  Nurse Short also found that Plaintiff met the American College of Rheumatalogy's criteria for fibromyalgia.  (Tr. at 416).  She listed Plaintiff's positive symptoms, including (1) muscle tender points, (2) non-restorative sleep, (3) morning stiffness, (4) muscle weakness, (5) irritable bowel syndrome, (6) frequent and severe headaches, (7) numbness and tingling, (8) anxiety, (9) severe panic attacks, (10) chronic fatigue syndrome, and (11) depression.  *Id.*  Nurse Short noted that Plaintiff had constant pain throughout her body of at least seven on a ten-point scale.  (Tr. at 417).  She concluded that Plaintiff was incapable of even a low stress job and "cannot maintain a normal workday schedule."  (Tr. at 417-18).

## C.   The ALJ's Findings

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 10, 2010.  (Tr. at 21). At step two, the ALJ found that Plaintiff's fibromyalgia, isolated headaches, adjustment disorder, generalized anxiety disorder, panic disorder with agoraphobia, and somatoform disorder were "severe" impairments.  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  *Id.*  Next, the

---

[4] "GAF is a standard measurement of an individual's overall 2 functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel,* 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting AM. PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL at 32 (4th ed. 1994)) ("DSM-IV"). A GAF of 55 indicates moderate symptoms including occasional panic attacks or moderate difficulty in social or occupational functioning.  DSM-IV at 32.

ALJ found that Plaintiff had the residual functional capacity to perform light and sedentary work with certain restrictions. *Id.* Specifically, he held that Plaintiff required the freedom to occasionally change positions from sitting to standing. *Id.* Additionally, she must work with things, not people, and she could perform non-complex tasks with simple instructions. *Id.* At step four, the ALJ found that Plaintiff could not perform her past relevant work. *Id.* However, at step five, the ALJ held that Plaintiff could perform other occupations such as hand packager, bench assembler, and machine tender. (Tr. at 22). As a result, the ALJ concluded that Plaintiff was not disabled. *Id.*

D.   **Appeals Council Proceedings**

In conjunction with her request for review of the ALJ's decision, Plaintiff submitted to the Appeals Council new medical source opinions from her treating physician Dr. Jack Short. (Tr. at 440-48, 454-59). In the March 2012 Fibromyalgia Medical Evaluation and Mental Residual Functional Capacity forms that he completed, Dr. Short opined that Plaintiff would be absent from work more than three times per month due to her impairments. (Tr. at 447, 458). He also stated that Plaintiff had constant pain in her upper and lower extremities of eight on a ten-point scale, which was relieved only with rest and medication. (Tr. at 443-44). Dr. Short observed that being in public exacerbated Plaintiff's essential tremor and pain. (Tr. at 458). According to Dr. Short, Plaintiff was markedly limited in her ability to deal with work stress, and her pain would constantly interfere with her attention and concentration. (Tr. at 444). Dr. Short noted that physical activity exacerbated Plaintiff's constant pain which required her to rest during her activities of daily living. (Tr. at 441, 443, 458, 459).

Addressing her mental health, Dr. Short observed that Plaintiff was unlikely to be a

productive member of society due to her severe agoraphobia, pain, and past emotional disturbances. (Tr. at 455). Dr. Short opined that Plaintiff was unable to satisfactorily perform the following: (1) maintain regular work attendance and be punctual; (2) sustain an ordinary work routine without special supervision; (3) complete her workday and week without interruptions from her psychological symptoms; (4) perform at a consistent pace without an unreasonable amount of rest; (5) deal with normal work stress; and (6) interact appropriately with the public. (Tr. at 457-58). Dr. Short observed that the stress Plaintiff suffered from appearing in public exacerbated her tremors which increased or triggered her fibromyalgia pain. *Id.* at 458-59.

Dr. Short found that Plaintiff could lift less than ten pounds frequently, but never anything heavier and must be able to shift positions at will and lie down at unscheduled times during the day. (Tr. at 445-46). He also opined that Plaintiff could only use her arms, hands, and fingers for tasks less than 20 percent of the workday. (Tr. at 445-47). The Appeals Council summarily denied review of the ALJ's decision, stating that it had "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council," but the "information does not provide a basis for changing the [ALJ's] decision. (Tr. at 1-2).

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

"An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits." *Carey v. Apfel,* 230 F.3d 131, 142 (5th Cir. 2000). However, "[t]his Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Id.* "To

7

establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Id.* (quotation omitted).

### III. ARGUMENTS AND ANALYSIS

Plaintiff raises three issues for review, not all of which will be addressed for the reasons discussed below. The issues raised are as follows: (1) whether the new evidence presented to the Appeals Council diluted the record such that the ALJ's decision was not substantially supported; (2) whether the ALJ committed reversible error when he failed to consider Plaintiff's somatization disorder; and (3) whether the ALJ failed to adequately consider Plaintiff's fibromyalgia.

As to Issue One, Plaintiff argues that the Appeals Council was required to evaluate Dr. Short's treating source opinion under the six-factor test in 20 C.F.R. § 404.1527(d), but the Council's summary denial of her appeal provides no indication that it did so. (Doc. 19-1 at 16). Plaintiff urges that the new medical evidence presented in Dr. Short's opinion is so inconsistent with the ALJ's findings that it undermined the foundation for the ALJ's determination and remand is thus required. *Id.* at 16-19.

Defendant responds that the Appeals Council fulfilled its duty to consider the new evidence Plaintiff submitted, and Plaintiff has not shown that the evidence is relevant or material to the outcome of the proceedings. (Doc. 23 at 10-11). Defendant notes that the Commissioner has the final responsibility to determine a claimant's RFC, whether a claimant meets or equals a listed impairment, and whether a claimant is disabled. Thus, Defendant asserts that Dr. Short's conclusions on these points need not be given controlling weight, nor was the Appeals Council required to apply the six factors enumerated in 20 C.F.R. § 404.1527(d) in rejecting his opinion.

*Id.* at 12-14, 16. Moreover, Defendant urges that Dr. Short's recent opinions as to Plaintiff's physical and mental abilities are contradicted by other medical evidence of record. *Id.* at 15-16, 18-21.

Plaintiff replies that Dr. Short did not infringe on issues reserved to the Commissioner because Dr. Short did not offer any opinion regarding (1) Plaintiff's RFC; (2) whether Plaintiff's impairments met or equaled a Listing; (3) whether Plaintiff's RFC prevented her from doing her past relevant work; or (4) whether Plaintiff was disabled under the Act. (Doc. 24 at 4-5). Rather, Dr. Short offered a medical source statement, which the Commissioner was required to consider in determining Plaintiff's RFC. *Id.* at 5. Finally, Plaintiff asserts that Dr. Short's opinions regarding her limitations due to tremors and pain were supported by other physicians' records. *Id.* at 7.

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating physician. 20 C.F.R. § 404.1527(d). In fact, when "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id.* Nevertheless, if the evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Newton*, 209 F.3d at 455. The opinion

9

of a treating physician cannot be rejected absent good cause that is clearly articulated in the written decision. *Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001).

Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *Higginbotham*, 405 F.3d at 335 n.1. However, where new medical opinion evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, several judges have found that the case should be remanded so that the Appeals Council can fully evaluate the treating source statement as required by law. *Martinez ex rel. T.P. v. Colvin*, 2013 WL 1194234, *4 (N.D. Tex. 2012) (Averitte, M.J.) (remand required where the Appeals Council's summary denial of a request for review gave no indication that the Council had evaluated the treating source statement pursuant to 20 C.F.R. § 404.1527), *adopted by* 2013 WL 1197743 (N.D. Tex. 2013); *Collins v. Astrue*, 2012 WL 2358296, *10 (N.D. Tex. 2012) (Toliver, M.J.) (same); *James v. Astrue*, 2012 WL 920014, *6 (N.D. Tex. 2012) (Kaplan, M.J.) (same); *Kelly v. Comm'r of Soc. Sec. Admin.*, 2012 WL 527866, *12-13 (N.D. Tex.) (Stickney, M.J.) (same), *adopted by* 2012 WL 527864 (N.D. Tex. 2012); *cf.* SSR 96-5 (providing that adjudicators must weigh medical source statements and RFC assessments and "provide appropriate explanations for accepting or rejecting such opinions"). This caselaw also finds support in 20 C.F.R. § 404.1527(f)(3), which requires that when the Appeals Council makes a decision, it must follow the same rules for considering medical opinion evidence that ALJs follow.

In the case at bar, Dr. Short's latest opinion directly contradicts the findings of the ALJ and the Appeals Council. Dr. Short found that, due to her impairments, Plaintiff (1) would be absent from work more than three times per month; (2) was markedly limited in her ability to

deal with work stress, and her pain would constantly interfere with her attention and concentration; (3) had to lie down at unscheduled times during the day; (4) could not regularly attend and complete work without interruptions from her psychological symptoms; (5) could never lift anything heavier than ten pounds; and (6) could not use her upper extremities for more than 20 percent of the workday. (Tr. at 444-447, 457-58). On the other hand, the ALJ found, and the Appeals Council summarily affirmed, that Plaintiff could (1) perform a wide modified range of "light base-level work duties" and "less strenuous sedentary base-level duties" with a sit-stand option; (2) perform non-complex tasks with simple instructions; (3) lift more than ten pounds; (4) use her hands more than occasionally; and (5) would not routinely miss four workdays per month. (Tr. at 16-17, 19-20).

   Dr. Short's new medical evidence is thus so inconsistent with the ALJ's findings that it undermined the ultimate disability determination. Therefore, this case must be remanded so that the Appeals Council can fully evaluate the treating source statement as required by law. *See Martinez*, 2013 WL 1194234 at *4. If the Appeals Council wishes to reject Dr. Short's opinion, it must clearly articulate good cause for doing so in its written decision. *See Myers,* 238 F.3d at 621. Because the Appeals Council erred in failing to explicitly address Dr. Short's opinion, the Court need not address Plaintiff's remaining claims because she can raise those issues on remand. *See Carry v. Heckler*, 750 F.2d 479, 486-87 (5th Cir. 1985) (holding that social security disability claimant's entire claim is revived when Appeals Council, on remand of case from district court, vacates its denial of review of ALJ's decision denying disability).

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's *Motion for Summary Judgment* (Doc. 19) is **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 22) is **DENIED**, and the Commissioner's decision is **REVERSED AND REMANDED**.

**SO ORDERED** on May 19, 2013.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE